**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORTH AMERICAN DENTAL** | : | |
| **WHOLESALERS, INC.** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | |
| | : | **NO.  11-247** |
| **DANAHER CORPORATION, ET AL.** | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                              August___, 2011

Presently before the Court is Defendants' Motion to Transfer or, in the Alternative, to Dismiss (Doc. 12) and Plaintiff's Response in Opposition thereto (Doc. 14).  For the reasons set forth below, the Court grants Defendants' Motion to Transfer this matter to the Central District of California.

## I.  BACKGROUND

### A.  The Parties

Plaintiff, North American Dental Wholesalers Inc. ("NAD"), is a Toronto, Canada-based importer and distributor of dental supply products, which it sells in United States.  Among the dental products that NAD distributes are Kerr branded consumable dental products, including Revolution Formula 2 and Premise Flowable, NX3/Nexus and Maxcem Elite.  Defendant Danaher Corporation ("Danaher"), a Delaware corporation having its principal place of business at its headquarters in Washington, D.C., is among the leading dental company in the world. Defendant Sybron Dental Specialties, Inc. ("Sybron"), a wholly-owned subsidiary of Danaher, manufactures dental consumables and small equipment serving the professional dental market

globally.  Kerr Corporation ("Kerr"), a wholly-owned subsidiary of Sybron, manufactures and sells Kerr dental products.  The operational offices of Sybron and Kerr are located at 1717 West Collins, Orange, California; but, the manufacture of Kerr® dental product is done principally at Sybron's facility in Mexicali, Mexico.

### B.  The Allegations

Plaintiff claims Sybron wildly discriminates in the prices at which it sells Kerr dental products.  As a result, Plaintiff has been able to acquire genuine Kerr products from domestic and foreign retailers at a low cost, and then re-sell those products in the United States at prices that are substantially lower than Sybron's prices.  Because Plaintiff offers Kerr products at lower prices, many United States dental retailers switched from exclusively acquiring Kerr products from Sybron to acquiring a significant quantity of Kerr products from Plaintiff.  According to Plaintiff, these retailers account for as much as eighty percent of the United States dental retail sales market.

Plaintiff alleges that in response to losing its market share, Sybron has set out to eliminate Plaintiff as a competitor by falsely representing to retailers that Plaintiff supplies counterfeit Kerr products.  In furtherance of this scheme, on December 30, 2010, Sybron distributed a letter signed by Sybron's Chief Intellectual Property Counsel Rajiv Yadav to at least thirty dental supply retailers throughout the United States and Canada.  The letter states, in part:

> I am writing to inform you about the existence of certain counterfeit Kerr products in the marketplace. . . . Our investigation has identified at least two Kerr products that are being counterfeited: Revolution Formula 2 and Premise Flowable.
>
> . . . .

-2-

> Kerr did not manufacture or supply the counterfeit product and, therefore, the counterfeits were put into commerce by distributors who supplied the product to customers.  Based on invoices received from customers, Kerr was able to determine the identity of at least some distributors who had sold counterfeit Revolution Formula 2 to customers. . . . The distributors have informed Kerr that they bought Revolution Formula 2 Product from a company called **North American Dental Inc.**

(Am. Compl., Ex. 2.)  Plaintiff alleges that, though the letter, drafted on Sybron Dental Specialties letterhead, was crafted by Sybron's Chief Intellectual Property Counsel and distributed by Sybron from its Orange, California office, the false statements contained therein were "presumably authorized by Edward J. Buthusiem, who controls, supervises and oversees this aspect of Danaher's Dental Businesses in America, from facilities in Hatfield, PA, at 2800 Crystal Drive."  (Am. Compl. ¶ 79.)   Sybron also allegedly distributed the December 30, 2010 letter and a redacted communication to as many as 38 of its Valued International Distributors located in Asia, Mexico, Central and South America and the Carribean.  This redacted communication states:

> Dear Valued International Distributor,
>
> I would like to make you aware of a letter that went out to all of our distribution partners in the US and Canada regarding several incidences of counterfeit Kerr products that have been found being sold in the  marketplace. This problem came to light as we received a high volume of customer complaints on some of our most popular products. As you will read, we have identified a specific company, North American Dental Inc (NAD) as the supplier of these counterfeit products. NAD has operations in both Toronto, Ontario and Baltimore, Maryland and is very active in sourcing Kerr products from various global markets to be re-sold here in the United States and Canada.
>
> Sybron legal is currently undertaking a full investigation of NAD to determine the origination of the counterfeit products, as well as the source of legitimate Kerr products they are obtaining from other countries.  would like to stress the importance of controlling our products within your country to include sub-dealers

and retail establishments so they are not re- exported into the United States or Canada.

We believe this counterfeit problem is contained to the United States and Canada, but did want to make you aware of it should anyone be selling very low-cost Kerr products in your market.

(Am. Compl., Ex. 3.)

Plaintiff alleges that as a result of Defendants' false statements, retailers have stopped purchasing Kerr products from Plaintiff and have resumed purchasing the product from Sybron. Plaintiff further alleges that Sybron has (1) secured from its Valued International Distributors their agreement to stop selling Kerr products to Plaintiff; (2) secured the agreement of its domestic dental retailers to boycott Plaintiff; and (3) threatened Plaintiff with "baseless, anticompetitive litigation" over its sale of genuine Kerr dental products.  Plaintiff further alleges that Sybron repeated the false statements to the United States Food and Drug Administration ("FDA"), intending to deflect inquiries the FDA made in response to complaints from dentists relating to the quality and performance of Kerr products manufactured and distributed by Sybron. Plaintiff estimates that in 2011 alone it will have lost at least $10 million in sales revenues directly attributable to the false statements and representations Sybron made about the nature, characteristics, quality and origin of Kerr products that Plaintiff distributes.

## II.  PROCEDURAL HISTORY

Plaintiff filed the original Complaint (Doc.1) against Defendants on January 14, 2011. On April 14, 2011, Plaintiff filed an Amended Complaint (Doc. 10).  In the Complaint, Plaintiff asserts the following claims for relief: violations of Section 43(a)(1)(A) and (B) of the Lanham Act, 15 U.S.C.§1125(a)(1)(A) and (B); commercial disparagement; commercial defamation;

unfair competition; tortious interference with prospective advantageous business relations; and tort.  On April 28, 2011, Defendants filed the instant Motion to Transfer (Doc. 12).  On May 6, 2011, Plaintiff filed a Response in Opposition thereto (Doc. 14).  The Court now addresses this pending motion.

## III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U .S.C. § 1404(a).  Section 1404(a) applies when venue is proper both in the district originally chosen and in the proposed transfer district.  A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and, (3) the proposed transfer will be in the interest of justice.  28 U.S.C. § 1404(a); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of conveniences tips in favor of transfer. Jumara, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiffs' choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive

and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the

relationship of the jury and the community to the underlying district. Jumara, 55 F.3d at 879-80;

McMillan v. Weeks Marine, Inc., No. 02-6741, 2002 WL 32107617, at *1 (E.D. Pa. Dec. 2,

2002).

The district court has broad discretion in deciding a motion for transfer of venue because

the analysis involved is "flexible and individualized." Stewart Org., Inc. v. Ricoh Corp., 487

U.S. 22, 29-30 (1988) ("Section 1404(a) is intended to place discretion in the district court to

adjudicate motions for transfer according to an individualized, case-by-case consideration of

convenience and fairness.").  Despite this wide latitude, a transfer motion is not to be granted

without a careful weighing of relevant factors favoring and disfavoring the plaintiff's selection of

venue.  Jumara, 55 F.3d at 879-80.

## IV.  DISCUSSION

Defendants now move to transfer this case to the Central District of California.  In

support of their motion, Defendants assert that this action could have been originally brought in

the Central District of California and the factors set forth in Jumara weigh in favor of transfer.

For the reasons that follow, the Court agrees with Defendants and grants Defendants' motion.

### A.  Propriety of Venue in the Central District of California

As a threshold issue, to justify a transfer, there must be a showing that the case could

have been brought in the venue in which the defendant seeks transfer. See 28 U.S.C. § 1404(a);

Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp., 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002).

Here, the parties do not dispute that this action could have originally been brought in the Central

District of California because Defendants Sybron and Kerr have principal places of business

located in California and some of the alleged events or omissions giving rise to the claim occurred there.

**B.**  ***Jumara* Factors Analysis**

Having found that Plaintiff could have initiated this action in the Central District of California, the Court must now determine whether the balance of conveniences favor transfer. Upon review of the parties' arguments, it is apparent that both the private and public Jumara factors weigh in favor of transferring this matter to the Central District of California.

First, the Court finds that Plaintiff's choice of forum should not be given the deference typically afforded to plaintiffs when considering a motion to transfer because Pennsylvania is not Plaintiff's home forum and the central actions giving rise to the Complaint did not occur here.  As Plaintiff concedes, Pennsylvania is not its home forum, and therefore, Plaintiff's choice to pursue its legal action here is not entitled to great weight.[1]  See, e.g., Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000) (transferring action from Pennsylvania to Florida in part because plaintiff resided in Florida, property at issue was located in Florida, and all events occurred in Florida); Matt v. Baxter Healthcare Corp., 74 F. Supp. 2d 467, 469-70 (E.D. Pa. 1999) (transferring action from Pennsylvania to Illinois in part because plaintiff did not reside in the district and most events occurred in Illinois).  Furthermore, the Court finds that the majority of the operative facts giving rise to Plaintiff's claims occurred in California.  Plaintiff even acknowledges that the alleged fraudulent statements that Defendants made to dental retailers via

---

[1]  Plaintiff is a Canadian corporation whose only connection to the Eastern District of Pennsylvania, outside of distributing some products to Pennsylvania retailers, is the presence of its counsel in this matter – the convenience of whom is not a factor the Court should consider.  See Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973).

the December 30, 2010 letter and redacted communication to Valued International Distributors did not originate in Pennsylvania, but originated in California.  Plaintiff attempts to connect these events to Pennsylvania by alleging that Dahaner's legal counsel in Pennsylvania played a central role in "encouraging, supervising and regulating" Sybron's conduct.[2]  Even if this were true, based on the allegations in Plaintiff's Complaint, it appears that the key action giving rise to Plaintiff's claims was the drafting and distribution of  certain correspondence by Sybron's legal counsel in California.

Second, the Court finds that because less deference is afforded to Plaintiff's choice of forum, Defendant's choice of forum should be given more weight, and in this matter, Defendant's choice of forum is the Central District of California.  See Decker v. Marriott Hotel Servs., Inc,, No. 06-3191, 2007 WL 1630097, at * 1 (E.D. Pa. Jun. 4, 2007) (considering defendant's choice of forum where plaintiff's choice given little weight).

Third, as aforementioned, the Court finds that Plaintiff's claim arose in California, a factor which favors Defendant.  Plaintiff contends that it chose to sue in the Eastern District of Pennsylvania because Danaher's legal counsel, who allegedly encouraged Sybron's unlawful competitive activities, is located Pennsylvania.  Nonetheless, Plaintiff's Amended Complaint clearly alleges that the false communications at issue were written and sent by Sybron from its principal place of business in California.  See Saint-Gobain Calmar, Inc., 230 F. Supp. 2d at 660 (explaining that the fact that the claim arose in a district other than the one in which the action is

---

[2]  This allegation is phrased as a presumption in Plaintiff's Complaint.  Besides the fact that a parent-subsidiary relationship exists, there are no other facts alleged in the Complaint that give rise to the inference that Dahaner's legal counsel directed the actions of Sybron's legal counsel.

brought weighs in favoring of transferring the action to the district in which the central facts of a lawsuit occurred).

Fourth, the Court finds that the convenience to the parties and witnesses appears to slightly favor Plaintiff because of the relative financial disparity between the parties.  Defendants contend that the two principal defendants, Sybron and Kerr, and several key third-party witnesses are located in California.  Plaintiff counters that several third-party witnesses including international corporations and at least thirty dental retailers throughout the United States live outside the Los Angeles federal district court vicinity.  With respect to the convenience of witnesses, it appears that both fora would be equally inconvenient as so many of the witnesses reside outside of both California and Pennsylvania.  Moreover, neither party has expressed that any key witnesses would be unavailable for trial in either forum.  Thus, this consideration does not favor either party.  See Jumara, 55 F.3d at 879 (convenience of the witnesses is to be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora").

With respect to the convenience to the parties, Plaintiff argues that Defendants, as the largest manufacturer and distributor of dental products within the United States, have the financial means to travel, whereas, Plaintiff, a family owned and operated private business, would be burdened financially if the matter were transferred to California.  It appears, therefore, that it would be inconvenient, though not impossible, for Plaintiff to litigate this claim in California, whereas the same cannot be said for Defendants having to litigate this claim in Pennsylvania.  Accordingly, the Court finds that it would be slightly more convenient for the parties to litigate this case in the Eastern District of Pennsylvania.

Fifth, the Court finds that transferring this matter to California would best serve the judicial interest in administrative efficiency.  Plaintiff contends that the speculative possibility that the matter will be disposed of more expeditiously in the Central District of California does not justify transfer because all other factors weigh in favor of keeping the matter in Pennsylvania. This argument obviously falls short as the Court has already determined that several of the Jumara factors weigh in favor of transferring the matter to California.  Moreover, as Defendants assert, Kerr has brought a separate action in the Central District of California and consolidation of the instant proceeding with Kerr's pending action in California would undoubtedly eliminate the wastefulness of duplicative proceedings in the two districts.  See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 537 (D.N.J. 2000) ("Where related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals.").  Moreover, the substantially lighter caseload of the Central District of California would likely lead to a speedier path to trial.

Sixth, the Court finds that California has a more substantial public interest in resolving this dispute than Pennsylvania.  See Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 193 (3d Cir. 2008) ( the "non-local" nature of a dispute favors transfer to a forum with a more substantial interest).  Plaintiff argues that because substantial events relating to the action occurred in the Pennsylvania, allowing the Eastern District of Pennsylvania to determine the controversy satisfies the public interest.  For reasons already discussed, the Court rejects Plaintiff's contention that substantial events giving rise to Plaintiff's claim took place in Pennsylvania. Rather, Defendants have demonstrated that California has a more substantial interest in resolving this dispute because it involves the conduct of individuals in California and the intellectual

property of corporations with principal places of business in California.  See e.g., Liggett Group Inc., 102 F. Supp. 2d at 535 (finding that North Carolina had a compelling interest in regulating the conduct of business in the state and had a substantial interest in resolving the dispute because both parties maintain their principal place of business in North Carolina).

Seventh, the Court finds that the access to proof appears to be a neutral factor that has little bearing on the transfer issue.  Defendants contend that many relevant records are located in California and thus it would be more convenient to transfer the matter there.  As Plaintiff indicates, however, that this is not determinative due to the ease of portability of such documents.  Moreover, this portability provides access to similarly relevant documents located in Mexico, Germany, Michigan, and Minnesota.

In sum, the Court finds that the balance of both the private and public factors favors transferring this matter to the Central District of California.  The Plaintiff's choice of forum is given less weight, and Defendants' choice of forum is given greater weight, because the Eastern District of Pennsylvania is not Plaintiff's home forum.  The convenience of the witnesses slightly favors Plaintiff, but only because of the financial disparity between the parties.  The access to proof appears to be a neutral factor.  All remaining factors, however, weigh in Defendants' favor - the claim giving rise to the Complaint arose in the Central District of California, transfer to the Central District of California would best serve the judicial interest in administrative efficiency, and it appears that California has a more substantial public interest in resolving this dispute than Pennsylvania.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Motion to Transfer this matter to the Central District of California is granted.  An appropriate Order follows.